**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SHANNON TRAHAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10-cv-00198-WS-B |
| | ) | |
| BP, plc, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY
SERVICES, INC.'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT**

Defendant, Halliburton Energy Services, Inc. ("HESI"), respectfully files this memorandum in support of its motions asking the Court to dismiss all claims in the Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, alternatively, to require Plaintiffs to file a more definitive statement of their pleading pursuant to Rule 12(e).

In this putative class action, Plaintiffs, Shannon Trahan and Dr. John Gonzales, owners and managers of real estate and real estate rentals on the Gulf of Mexico in Baldwin County, Alabama, assert a claim for negligence against all defendants and a claim under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq*. ("OPA") against BP.  Plaintiffs assert that the defendants caused the Deepwater Horizon explosion and subsequent oil spill, allegedly resulting in "loss of revenue to persons (and businesses) who are being prevented from using the Gulf of Mexico and Alabama's Coastal Zone for diverse activities."  (Complaint ¶¶ 1, 16)

OPA provides the exclusive federal remedy for the categories of oil spill-related damages that Plaintiffs allege.   As the exclusive remedial scheme for such damages, OPA specifically preempts or displaces maritime tort claims seeking damages caused by oil spills.   Plaintiffs assert a state law claim against HESI for negligence,[1] attempting to circumvent OPA's exclusive remedial scheme and its preemptive effect on maritime tort claims.   However, Plaintiffs lack state law causes of action against HESI as the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA")—which applies state law in certain instances on the Outer Continental Shelf—does not apply here.   Plaintiffs' claims arise, if at all, under maritime law and are, therefore, preempted by OPA.

In addition, because OPA applies to Plaintiffs' claims, this Court lacks subject matter jurisdiction over such claims due to Plaintiffs' failure to comply with the statute's mandatory claims presentment procedure.   This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims.   Moreover, as recognized in the Complaint, Plaintiffs' OPA claims may only be asserted against a "responsible party" designated under the statute. (Complaint ¶ 33-39)  As HESI is not a designated "responsible party," Plaintiffs' claims against HESI must be dismissed.

Even assuming Plaintiffs' negligence claim is properly asserted against HESI, such claim requires dismissal under Rule 12(b)(6) because it is deficient under the Supreme Court's *Twombly/Iqbal* analysis and, to the extent they seek damages for Plaintiffs' alleged inability to use the Gulf of Mexico and Alabama's Coastal Zone for commercial purposes, they are barred by the "economic loss" rule established under federal maritime law.

---

[1] *See* Complaint ¶ 5 (asserting that Plaintiffs' claims arise under Alabama law pursuant to § 1333(a)(2) of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA"), which under certain circumstances borrows "adjacent state law" as a proxy for federal law).

Plaintiffs' claim for punitive damages must be dismissed as such damages are not recoverable under either OPA or maritime law for the damages they allege.

Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the event that Plaintiffs' negligence claim is not otherwise barred by OPA, HESI requests, in the alternative, that Plaintiffs be required to file a more definitive statement of their pleading pursuant to Rule 12(e). In support of its motion, HESI submits the following memorandum:

## INTRODUCTION AND SUMMARY

This case arises out of the loss of the Deepwater Horizon, a mobile drilling unit that Transocean owned and operated.  (Complaint ¶¶ 1, 7)  At the time of the loss, the Deepwater Horizon was completing a well for BP on the Outer Continental Shelf.  (*Id.* ¶ 7)  The fire, explosion, and subsequent sinking of the Deepwater Horizon resulted in the release of oil from the well.  (*Id.* ¶ 1)  As a result of the release, the Coast Guard first designated BP as a "responsible party" under OPA.  (*Id.* ¶ 36)  HESI is not a designated "responsible party" under OPA.[2]

The lead Plaintiffs in this putative class action allege they are owners of property on the Gulf of Mexico and in the coastal zone and earn income from the rental of such property.  (*Id.* ¶¶ 2-3)  Plaintiffs seek to certify a proposed class that includes

> [a]ll Alabama property owners and/or residents who live or work in, or derive income from, the Alabama "Coastal Zone" . . . and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 fire and

---

[2] Courts may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(B)(6) motion").

explosion which occurred aboard the Deepwater Horizon drilling rig and the oil spill resulting therefrom.

(*Id.* ¶ 18)  Generally, the Complaint alleges that the acts of various defendants, including HESI, caused the fire and explosion on board the Deepwater Horizon, its sinking, and the resulting oil spill.  (*Id.* ¶¶ 1, 27-31)

Nine days after the loss of the Deepwater Horizon, Plaintiffs filed this suit alleging damages for loss of revenue to persons and business who are being prevented from using the Gulf of Mexico and the Alabama Coastal Zone.  (*Id.* ¶ 16)  The perfunctory Complaint is devoid of any allegations detailing the specific damages that Plaintiffs sustained, or any HESI wrongdoing that has caused damage to Plaintiffs.  As discussed below, Plaintiffs' generalized, conclusory allegations fail to establish subject matter jurisdiction and fail to state a claim upon which relief can be granted.

## ARGUMENTS AND AUTHORITY

### A.    Legal Standard on Motion to Dismiss under Rule 12(b)(1) and (6)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A court may decide such a motion on one of three bases:  (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.  *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).  In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls to

the party asserting jurisdiction.  *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

Similarly, Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of action. To that end, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although courts accept well-pleaded facts as true, the U.S. Supreme Court recently rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Coventry First, LLC v. McCarty*, No. 09-11682, 2010 U.S. App. LEXIS 9227, at *4-5 (11th Cir. May 5, 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)).  Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.

**B.    Plaintiffs' non-OPA Negligence Claim, if Any, Is Governed by Federal and/or General Maritime Law, not State Law.**

Plaintiffs assert a negligence claim against HESI under Alabama law.  However, as Plaintiffs concede, the damages they assert are precisely the types of damages that Congress intended to be recovered exclusively under OPA.  (*See* Complaint ¶¶ 35, 39)  Plaintiffs' attempt

to make an end run around OPA must fail.  Further, Plaintiffs have no legally viable state law claim for negligence against HESI because, to the extent such claim is viable outside of OPA (and it is not), it arises under general maritime law, not under state law, and OPA specifically preempts general maritime law for claims recoverable under the statute.

But for Congress's enactment of OPA, Plaintiffs' negligence claim would necessarily arise under the Court's admiralty jurisdiction, and general maritime law would apply, not state law.  Although Plaintiffs do not specifically plead admiralty jurisdiction, federal maritime law applies.  *See* Fed. R. Civ. P. 9(h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.")

Plaintiffs incorrectly assert that Alabama law applies to their negligence claim against HESI pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA").  OCSLA operates so as to apply, as proxy for federal law, the law of "each adjacent State" to the situs of certain locations on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333(a)(2)(A); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 480-81 (1981) ("OCSLA extends the 'Constitution and laws and civil and political jurisdiction of the United States' to the subsoil and seabed of the Outer Continental Shelf and to *'artificial islands and fixed structures*' built for discovery, extraction, and transportation of minerals. . . . All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law." (citations omitted) (emphasis added)); *Texaco Exploration and Prod., Inc. v. Amclyde Engineered Products Co, Inc.*, 448 F.3d 760, 772 (5th Cir. 2006) (same).  However, OCSLA's "adjacent state law" provision does not apply in this case.

To determine whether OCSLA applies, and thus whether adjacent state law applies, the Court must employ a three-part test:  (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.  *See Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 n.3 (5th Cir. 2009), *citing Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355 (1969).

The distinction between a "fixed platform" and a "vessel" is important for purposes of determining whether a controversy arises "on a situs covered by OCSLA."  In *Offshore Logistics, Inc. v. Tallentire*, the Supreme Court stated:

> The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and *not as vessels*, for purposes of defining the applicable law because maritime law was deemed inapposite to these *fixed structures*.

477 U.S. 207, 217 (1986) (emphasis added).  Thus, the purpose of OCSLA is to apply state law to actions arising on or related to fixed platforms or structures attached to the Outer Continental Shelf, while maritime law continues to govern actions arising on or related to a "vessel."

Applying the first prong of this test demonstrates that the Deepwater Horizon was *not* "a situs covered by OCSLA."  The Deepwater Horizon was neither an "artificial island" nor a "fixed structure" to which OCSLA applies.  Plaintiffs concede as much, characterizing the Deepwater Horizon as "a semi-submersible mobile drilling rig, which was performing completion operations for BP . . . on the outer Continental Shelf, at the site from which the oil spill now originates."  (Complaint ¶ 7)  Plaintiffs assert nowhere in their Complaint that the Deepwater Horizon was a fixed platform.  Indeed, consistent with Plaintiffs' description, the Deepwater Horizon—a free-floating, semisubmersible mobile drilling rig—was a "vessel" operating in

navigable water at all relevant times.  Courts have consistently held that semi-submerged, mobile rigs like the Deepwater Horizon are "vessels," and not fixed platforms.[3]  *See Manuel v. P.A. W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit" deployed to nineteen different sites over two years); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").  As Plaintiffs also concede, the Deepwater Horizon was in the midst of "completion operations" when it sank, meaning it was "mobile" in nature—intending to move off the well-site location to allow for production operations of a more permanent nature.  (Complaint ¶ 7)  Because the alleged torts neither occurred nor arose on a fixed platform or other artificial island over the

---

[3] That the Deepwater Horizon was a "vessel in navigation" is further supported by facts alleged in the public record. For example, certain Transocean employees and/or representatives of deceased persons who were aboard the Deepwater Horizon on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.  In doing so, these plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board Deepwater Horizon, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq*." *See, e.g.*, Plaintiffs Stephen and Sara Stones' Petition in Intervention at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the Deepwater Horizon, and related entities have filed a Petition under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability capped for an amount equal to the value of the "vessel."  These Transocean entities have filed such Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

Outer Continental Shelf, OCSLA does not apply.  *See Grand Isle Shipyard*, 589 F.3d at 784 ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

Under the second prong of the admiralty jurisdiction test, maritime law applies of its own force to alleged torts arising out of the Deepwater Horizon incident.  To determine whether admiralty jurisdiction exists over the alleged torts at issue, both a "location test" and a "connection-to-maritime-activity" test must be satisfied.  *In re Katrina Canal Breaches Litig.*, 324 Fed. Appx. 370, 376 (5th Cir. 2009).  The "location test" requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water.  *Id.*  Plaintiffs clearly allege that the torts at issue occurred on navigable water. The majority of the allegedly negligent acts purportedly occurred *on* the Deepwater Horizon while it was afloat in navigable waters in the Gulf of Mexico. (*See* Complaint ¶¶ 1, 7-10, 28(a)-(r))  Moreover, any alleged injuries to natural resources in the Gulf undoubtedly occurred in the Gulf of Mexico's navigable waters.  Thus, the location test for admiralty jurisdiction is satisfied.

Even assuming the Complaint can be construed as alleging damages to shoreline real or personal property, Plaintiffs' claims still would arise under maritime law and not state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 740, which extends admiralty and maritime jurisdiction to "all cases of damages or injury, to person or property, *caused by a vessel on navigable water,* notwithstanding that such damage or injury be done or consummated on land." (emphasis added).  *See also Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986) (under Admiralty Extension Act, admiralty jurisdiction extends to claims for shoreside damages resulting from chemical spill caused by colliding ships on navigable waterway); *In re the Exxon Valdez*, 767 F. Supp. 1509, 1512 (D.

Ala. 1991) (under Admiralty Extension Act, damages occurring on land due to oil spill emanating from vessel in navigable waters are maritime torts subject to admiralty jurisdiction).

With respect to the separate "connection-to-maritime-activity" test, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theroit v. Bay Drilling Corp.*, 791 F.2d 527, 538-39 (5th Cir. 1986); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981). Further, oil spill cases involving seagoing vessels that spill oil directly into navigable waters have been held to be connected to maritime activity, and claims arising out of such oil spills (at least prior to the enactment of OPA) fall under general maritime law. *In re Exxon Valdez*, 767 F. Supp. at 1512-14 (damage claims resulting from oil spill cognizable under maritime law because they were "caused by a vessel on navigable water"); *Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

Had OPA not been enacted, Plaintiffs' claims would have arisen, if at all, under general maritime law. OCSLA does not bring such claims within the purview of state law.[4] Accordingly, Plaintiffs' improperly pled state law claim for negligence should be dismissed. Even if Plaintiffs' claim is construed to assert a maritime negligence claim, such claim is preempted or displaced by OPA.

---

[4] Even if § 1333(a)(2) of OCSLA were to apply so as to incorporate "adjacent state law," the statute likely would incorporate Louisiana law, not Alabama law, as a proxy for federal law. At the time of the incident, the Deepwater Horizon was located off the coast of Louisiana, or at least closer to Louisiana's coast than Alabama's coast. Plaintiffs admit that the Deepwater Horizon incident ocurred "*off the Louisiana coast.*" (Complaint ¶ 1 (emphasis added)) *See also* Situation Status Map – July 1, 2010,
http://www.deepwaterhorizonresponse.com/posted/2931/20100701_0600_Situation_Status_Map.729419.pdf
(official website of the Deepwater Horizon Unified Command, showing the location of the Deepwater Horizon in relation to shorelines and state boundary lines of Gulf states). The Court may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion. *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006).

**C.      Plaintiffs' Alleged Damages Demonstrate that OPA Is Their Exclusive Remedy.**

Plaintiffs' Complaint, while asserting an OPA claim against BP, attempts to open a wider net by asserting a state law negligence claim against non-BP defendants, including HESI.  OPA, however, is the **exclusive** remedy for the types of damages alleged.  Plaintiffs cannot circumvent OPA with general state common law allegations.  OPA displaces all such claims and otherwise applicable federal laws as they pertain to causes of action and the recovery of damages arising from oil spills.  OPA was enacted by Congress in the wake of the Exxon Valdez oil spill to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  The statute provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."  *Tanguis v. M/V WESTCHESTER,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)).  *See also United States v. Bodenger*, No. 03-272, 2003 U.S. Dist. LEXIS 16987, at *5-6 (E.D. La. Sept. 26, 2003) (noting that OPA "established a comprehensive Federal oil spill response and liability legislative framework").  Its purpose is "to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Under OPA, injured parties may recover a broad range of damages from the responsible party:

(A) Natural resources

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be

recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

(B) Real or personal property

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C) Subsistence use

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(D) Revenues

Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

(E) Profits and earning capacity

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

(F) Public services

Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b).

OPA provides the ***exclusive federal remedy for recovery of oil spill related damages***, preempting non-OPA-based claims for recovery of those damages.  *See South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F.

Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA."). Addressing the preemptive effect of OPA, it has been held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Gabarick*, 623 F. Supp. 2d at 750-51. *See also Nat'l Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."). "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons." *Nat'l Shipping,* 924 F. Supp. at 1447.

Consequently, Plaintiffs' attempt to recover oil spill related damages covered by OPA under a state common law negligence theory must fail. Plaintiffs allege detrimental effects upon the Gulf of Mexico's marine and coastal environments and that the "oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses) who are being prevented from using the Gulf of Mexico and Alabama's Coastal Zone for diverse activities." (Complaint ¶¶ 14, 16) Clearly, these damage categories are encompassed by § 2703(b) of OPA, and Plaintiffs concede as much. (*Id.* ¶ 39 ("Plaintiffs and Class Members have suffered the type of damages that may be recovered pursuant to [OPA].")) Because "Congress intended OPA to be the exclusive federal law governing oil spills," *South Port Marine*, 234 F.3d at 65-66, Plaintiffs' negligence claim for recovery of oil spill related damages fails as a matter of law, requiring dismissal under 12(b)(6).

1.    **Plaintiffs' failure to present their claim through the OPA-mandated claims process deprives the Court of federal subject matter jurisdiction and precludes Plaintiffs from asserting a legally viable cause of action for recovery of damages related to the oil spill.**

Although OPA provides the exclusive remedy for oil spill-related damages, Plaintiffs failed to follow the Congressionally-mandated claims process in OPA.  Accordingly, this Court's subject matter jurisdiction cannot be properly invoked by the Plaintiffs, and the Complaint as to HESI should be dismissed on this independent, jurisdictional basis.

OPA provides a comprehensive statutory framework for parties who suffer damages from oil spills in navigable waters to make claims to a designated responsible party for recovery costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq*.  Parties claiming to have suffered damages from spills are required to present their claims to the responsible party before filing a lawsuit claiming damages:

> **[A]ll claims** for removal costs or damages **shall** be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.

33 U.S.C. § 2713(a) (emphasis added).  Claimants may only initiate suit *after a claim is presented in accordance with § 2713(a)* and the responsible party denies all liability for the claim or the claim is not settled by payment within ninety days after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Presuit presentment is mandatory:

> The clear text of § 2713 creates a ***mandatory condition precedent*** barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either:  (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later. 33 U.S.C. § 2713(c).

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to

present such claims to the designated responsible party); *LeBoeuf v. Texaco*, 9 F. Supp. 2d 661, 666 (E.D. La. 1998) (holding that section 2713 creates "mandatory conditions precedent to filing an action in either state or federal court"); *Marathon Pipe Line Co. v. LaRoche Indus. Inc*., 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant.").   OPA's plain language precludes the right to proceed in court without first exhausting the administrative process.  *See Boca Ciega Hotel, Inc.,* 51 F.3d at 238 (noting that OPA's use of the absolute words "all" and "shall" indicate its mandatory and exclusive nature with respect to its covered damages); *Johnson v. Colonial Pipeline Co*., 830 F. Supp. 309, 310-11 (E.D. Va. 1993) (dismissing oil damage and removal claims upon finding that "[i]n this case, plaintiffs have not complied with the presentation **requirement** of OPA") (emphasis added); *see also* S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report") (noting that "the bill **requires** claims to be presented in the first instance to the discharger, where known") (emphasis added).

In this case, Plaintiffs do not allege that they have made a presuit claim to the responsible party in accordance with OPA.  As a result, this Court lacks jurisdiction to hear any of Plaintiffs' claims related to the oil spill, and such claims should be dismissed.

> **2.   Plaintiffs' sole remedy for their alleged damages from the oil spill, if any, lies against the "responsible party" designated under OPA, not against HESI.**

Plaintiffs' failure to present their claims under OPA warrants a dismissal of the case as a whole.  Even if Plaintiffs were subsequently to satisfy the OPA claims presentment process, their sole remedy, if any, lies against the designated responsible party or parties, not against HESI.  Again, Plaintiffs concede as much.  (Complaint ¶ 36 ("The Coast Guard has named BP as the

responsible party.  Therefore, BP is liable pursuant to [OPA] *for all the damages that result from the oil spill*." (emphasis added)))

Under OPA, the responsible party for the vessel or facility from which an oil spill emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, **each responsible party** for a vessel or facility from which oil is discharged ... **is liable for the removal costs and damages** specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  In the case of an oil spill originating from an offshore vessel or facility, OPA defines the "responsible party" as "the lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32)(C).  The Coast Guard designates the responsible party who is strictly liable for recovery costs and economic damages.  33 C.F.R. § 136.305.  *See also Gabarick*, 623 F. Supp. 2d at 744. ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source.  A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages."); Senate Report, at 723 (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the designated responsible party is the sole remedy for those injured by an oil spill.  "OPA only imposes liability against responsible parties." *Nat'l Shipping*, 924 F. Supp. at 1446.  Any recovery as against third-parties is limited to an action for contribution *by the responsible party*, not direct claims by those alleging injury resulting from an oil spill.  *See* 33 U.S.C. § 2709.  As the court in *Gabarick* explained:

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA **only against the responsible party and in accordance with**

> **the procedures established by OPA.  Then, the responsible party can take action to recover against third parties.**

623 F. Supp. 2d at 750 (emphasis added).  Plaintiffs, therefore, can only state viable claims against the responsible party and only in compliance with OPA's mandatory prerequisites.

Here, Plaintiffs cannot assert any viable claims against HESI because it is not a designated responsible party.  As in *Gabarick*, Plaintiffs must pursue their claims under OPA, and they may only do so against a designated responsible party.  HESI is not, as a matter of law, liable to Plaintiffs for their alleged damages resulting from the oil spill.  Accordingly, the Court should dismiss all such claims with prejudice under Rule 12(b)(6).

**D.    Plaintiffs' Claim Against HESI Fails to Contain Sufficient Factual Material, Accepted as True, to State a Claim for Relief that Is Plausible on Its Face.**

Independent of the OPA displacement and jurisdictional requirements, the Complaint also fails to state a claim to relief that is plausible on its face due to inherent and fatal pleading deficiencies.  Plaintiffs do not aver *any* specific facts supporting their claim against HESI.  Indeed, other than identifying HESI as a "foreign corporation doing business in the State of Alabama and within this district," HESI's entire relationship to the Deepwater Horizon is presented as a single paragraph, which states:

> Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

(Complaint ¶ 10)  The only factual allegation presented in this paragraph is the general statement that "Halliburton was engaged in cementing operations of the well and well cap."  The remainder of the paragraph asserting that some unspecified act by HESI increased pressure at the well and classifying the performance of the cementing operation as "upon information and belief, improperly and negligently performed," as well as the entirety of paragraphs 12-14 and 27-32,

are legal conclusions that are not entitled to any presumption of truth. Neither is the simple juxtaposition with the phrase "contributing to the fire, explosion and resulting oil spill." These are all simply conclusions drawn by the drafter of the Complaint; they are not factual averments.

It is not enough for Plaintiffs to simply aver in conclusory fashion that some unspecified act of HESI increased pressure at the well. Nor is it enough to simply aver that HESI was "negligent," without alleging sufficient facts to support the plausibility of that legal conclusion. A Rule 12(b)(6) motion tests the sufficiency of the pleadings. Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the formerly-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. at 561-62. Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). This standard "does not require 'detailed factual allegations,' ***but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation***." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps. First, the court determines which allegations in the complaint are not entitled to the assumption of truth. *Id.* at 1950. Courts reject attempts by plaintiffs to simply recite the elements of a cause of action or to "dress up" legal conclusions as factual allegations in determining whether a complaint contains sufficient factual information to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of the elements of a cause of action will not do."); *Am. Dental Assoc. v. Cigna Corp.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *11-12 (11th Cir. May 14, 2010) (quoting *Twombly*, 550 U.S. at 555).

Second, the court considers the remaining factual allegations that are entitled to the assumption of truth to determine whether they plausibly suggest an entitlement to relief. *Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 557). A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*; *see also Am. Dental Assoc.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *14. In such cases, the complaint should be dismissed pursuant to Rule 12(b)(6).

Applying this pleading standard to Plaintiffs' claim against HESI requires dismissal of such claim. First, Plaintiffs' assertions of the claim, at best dressed-up legal conclusions, are not entitled to the assumption of truth. Second, the only remaining factual allegations entitled to the assumption of truth as to HESI are its corporate status and the fact that it was purportedly performing unspecified cementing operations of the well and well cap. Those factual allegations do not plausibly suggest an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that HESI is liable for the sinking of the Deepwater Horizon and subsequent oil spill. *See Iqbal*, 129 S. Ct. at 1951.

Negligence under maritime law is the failure to use reasonable care under the circumstances. *Nat'l Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1450 (*citing* 8 Benedict on Admiralty § 3.02[B][4] (7th ed. 1995)). The elements of a maritime claim of negligence are

identical to those of its land-based counterpart, *i.e.*, a duty owed and breach of that duty, which proximately causes the plaintiff to suffer damages. *Kentucky Timber Exports v. Massan Shipping Indus.*, No. 93-0110-AH-C, 1996 U.S. Dist. LEXIS 455, at *24 (S.D. Ala. Jan. 11, 1996) (citing *Uncle Ben's Int'l Div. v. Hapag-Lloyd*, 855 F.2d 215, 216-17 (5th Cir. 1988)); *Consolidated Aluminum Corp. v. C. F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987), *cert. denied*, 486 U.S. 1055, 100 L. Ed. 2d 922, 108 S. Ct. 2821 (1988). The resultant harm must be reasonably foreseeable. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). Plaintiffs set forth their singular allegation that HESI "was engaged in cementing operations of the well and well cap" without any regard to the substance of their negligence claim. The Court cannot even begin an analysis of Plaintiffs' claim with this one "fact." Plaintiffs' allegations show no breach of duty in the cementing project. Plaintiffs state no facts regarding proximate cause or cause-in-fact to support the negligence claim. And, as is shown below, the Complaint fails to contain a sufficient factual recitation of the damages allegedly suffered. Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiffs' sole claim against HESI in its entirety under Rule 12(b)(6).

**E.     Alternatively, Plaintiffs Should Be Required to File a More Definitive Statement Detailing the Facts, if Any, Supporting Their Claim Against HESI.**

To the extent Plaintiffs' claim survives preemption under OPA (and it should not), Plaintiffs alternatively should be required to file a more definitive statement of their pleading pursuant to Rule 12(e) given the vague and ambiguous allegations against HESI. The Complaint fails to aver any factual statements demonstrating Plaintiffs' plausible entitlement to relief, including but not limited to any facts showing that HESI violated any duty to Plaintiffs or that any wrongdoing by HESI proximately caused the damages of which Plaintiffs complain. To the extent the Complaint may be construed as alleging damage to real property, Plaintiffs fail to

identify a single piece of real property that they own or lease that has been damaged.  These allegations and others are so vague and ambiguous that HESI cannot reasonably determine what property of Plaintiffs, if any, HESI is alleged to have damaged.  Therefore, at a minimum, and in order to permit HESI to reasonably prepare a response to Plaintiffs' claims, Plaintiffs should be required to file a more definitive statement of their pleading pursuant to Rule 12(e).

**F.**      **In the Alternative, to the Extent Plaintiffs Seek Damages for Their Alleged Inability to Use the Gulf of Mexico and Coastal Zone for Commercial Purposes, the Economic Loss Rule Bars Such Claims Against HESI as Plaintiffs Cannot Show Damage to a Proprietary Interest.**

Assuming *arguendo* that Plaintiffs' negligence claim against HESI is not otherwise barred by OPA (*see supra*), such claim would nonetheless fail under the economic loss rule because Plaintiffs do not allege any physical injury to a propriety interest, thereby precluding their recovery for economic losses.  Despite their assertion that they "use" the Gulf of Mexico and Alabama's Coastal Zone, Plaintiffs have not pled that they possess a proprietary interest in the Gulf of Mexico or Alabama's Coastal Zone.   Plaintiffs' failure to plead physical injury to a proprietary interest, or lack of any such proprietary interest, is dispositive, barring them from recovery for economic losses against HESI.

Plaintiffs further fail to allege that they use the area affected by the oil spill, and to what extent they use it.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566 (1992) (plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly "in the vicinity" of it).  Plaintiffs' failure to plead physical injury to a proprietary interest, or lack of any such proprietary interest, is dispositive, barring them from recovery for economic losses against HESI.

A plaintiff cannot recover under general maritime law for economic loss absent physical damage to a proprietary interest.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309

(1927).  "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006).  *See also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985); *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983).  The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature.  *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

Here, Plaintiffs seek recovery exclusively for economic losses.  Specifically, they seek recovery for loss of rental revenue.  (Complaint ¶ 16).  Such alleged damages relate exclusively to their purported inability to continue renting properties they own on the Gulf of Mexico in Alabama.  Although they might be able to recover for those injuries from the responsible party under OPA, they cannot do so here against HESI under a general theory of negligence because OPA preempts such claim and, independently, because the economic loss rule precludes their recovery under general maritime law.  Accordingly, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).

## G.     Plaintiffs Fail to Demonstrate any Injury in Fact.

Standing is a threshold matter to the subject matter jurisdiction inquiry, and a lack of standing requires dismissal.  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).  In order to establish standing to recover for their claims, Plaintiffs must demonstrate an "injury in fact" that is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"

*Lujan*, 504 U.S. at 561; *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Perhaps because Plaintiffs filed their Complaint only nine days after the Deepwater Horizon incident, Plaintiffs only allege damages to the effect that:  "The oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses) who are being prevented from using the Gulf of Mexico and Alabama's Coastal Zone for diverse activities."  (Complaint ¶ 16)  However, such broad allegations are insufficient to show a concrete and particularized injury.  *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205-06 (11th Cir. 1991) (holding plaintiffs' complaint should be dismissed because the injury alleged was supported only by conclusory allegations).

For future harm to satisfy the "injury in fact" requirement, the injury must be imminent. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require"); *see also Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152-53 (2009) (refusing to replace requirement of "imminent" harm with requirement of "realistic threat" of harm in the reasonably near future).  Failing to allege when, where, or how a future injury will occur is insufficient to show an actual or imminent injury for purposes of standing.  *See Elend v. Basham*, 471 F.3d 1199, 1206, 1209 (11th Cir. 2006) ("It is not enough that the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements.") (internal quotations omitted).

Plaintiffs provide no details regarding how they have been damaged, nor details demonstrating when, where, or how their future injuries will occur.  Therefore, based on the

vague and generalized damage allegations in the Complaint, Plaintiffs lack standing to bring their asserted non-OPA claims, and dismissal of all such claims is required.

**H.      Plaintiffs Cannot, As a Matter of Law, Recover Punitive Damages from HESI.**

In addition to the economic damages claim for lost revenue, Plaintiffs also demand recovery of punitive damages.  (Complaint ¶ 28(s))  As a matter of law, however, they cannot recover punitive damages.  OPA, which provides Plaintiffs' exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages.  *South Port Maine*, 234 F.3d at 66.  The statute's comprehensive list of recoverable damages is exclusive as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution."  *Id*. at 65.  Thus, as a matter of law, Plaintiffs cannot recover punitive damages even if their claim is construed as a maritime negligence claim.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief).  Plaintiffs' demand for the recovery of punitive damages, therefore, fails as a matter of law.

## CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead a viable claim against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claim against HESI in its entirety.  Alternatively, Plaintiffs should be required to file a more definitive statement of their pleading pursuant to Rule 12(e).

Respectfully submitted this 2nd day of July, 2010.

**GODWIN RONQUILLO PC**

DONALD E. GODWIN (GODWD 5022) *(pro hac vice)*
Email  dgodwin@godwinronquillo.com
BRUCE W. BOWMAN, JR. *(pro hac vice)*
Email  bbowman@godwinronquillo.com
JENNY L. MARTINEZ *(pro hac vice)*
Email  jmartinez@godwinronquillo.com
FLOYD R. HARTLEY, JR. *(pro hac vice)*
Email  fhartley@godwinronquillo.com
GAVIN E. HILL *(pro hac vice)*
Email  ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. ALAN YORK *(pro hac vice)*
Email  ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

and

**s/ John N. Leach**
JOHN N. LEACH  (LEACJ2634)
Email  jnl@helmsinglaw.com
JOSEPH P. H. BABINGTON  (BABIJ7938)
Email  jpb@helmsinglaw.com
RUSSELL C. BUFFKIN  (BUFFR6510)
Email  rcb@helmsinglaw.com
**HELMSING, LEACH, HERLONG, NEWMAN
& ROUSE, P.C.**
Post Office Box 2767
Mobile AL 36652
Telephone:  251.432.5521
Facsimile:  251.432.0633

**ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 2nd day of July, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

| | |
|---|---|
| Michael G. Huey, Esquire | John M. Johnson, Esquire |
| Dwain Churchill Denniston, Jr., Esquire | Adam K. Peck, Esquire |
| Colin Derrick Sherman, Esquire | William H. Brooks, Esquire |
| HUEY LAW FIRM LLC | Marchello D. Gray, Esquire |
| 1059 Dauphin Street | LIGHTFOOT, FRANKLIN & WHITE, L.L.C. |
| Mobile, AL 36633 | 400 North 20th Street |
| **Counsel for Plaintiffs** | Birmingham, AL 35203 |
| | **Counsel for BP America, Inc. and** |
| | **BP Products North America, Inc.** |
| | |
| Christopher L. Trahan, Esquire | Richard C. Godfrey, Esquire |
| Post Office Box 4525 | John T. Hickey, Jr., Esquire |
| Lafayette, LA 70502 | James Andrew Langan, Esquire |
| **Counsel for Plaintiffs** | KIRKLAND & ELLIS, LLP |
| | 300 N. LaSalle |
| L. Clayton Burgess, Esquire | Chicago, IL 60654 |
| Lauren L. Gardner, Esquire | **Counsel for BP America, Inc. and** |
| Post Office Drawer 5250 | **BP Products North America, Inc.** |
| Lafayette, LA 70502 | |
| **Counsel for Plaintiffs** | |
| | |
| A. Danner Frazer, Jr., Esquire | David J. Beck, Esquire |
| Robert J. Mullican, Jr., Esquire | BECK, REDDEN & SECREST, LLP |
| FRAZER GREENE UPCHURCH & BAKER | One Houston Center |
| Post Office Box 1686 | 1221 McKinney Street, Suite 4500 |
| Mobile, AL 36633 | Houston, TX 77010 |
| **Counsel for Cameron International Corp.** | **Counsel for Cameron International Corp.** |
| | |
| BP plc | |
| CT Corporation System | |
| 2 North Jackson Street, Suite 605 | |
| Montgomery, AL 36104 | |

s/ John N. Leach
Of counsel